Filed 1/20/16  In re Isaac S. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ISAAC S., a Person Coming Under the Juvenile Court Law. | B264830 |
| | (Los Angeles County Super. Ct. No. DK08425) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| MATTHEW S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Marguerite D. Downing, Judge.  Affirmed.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel for Plaintiff and Respondent.

Appellant Matthew S. (father) appeals from the juvenile court's order according father monitored visits with his son Isaac (born Sept. 2005). Father contends the visitation order is vague and vests too much discretion with the Los Angeles Department of Children and Family Services (the Department). Father further contends his visits should be unmonitored. The record discloses no abuse of discretion and we therefore affirm the juvenile court's order.

## BACKGROUND

### Detention and section 300 petition

On October 14, 2014, the Department received a domestic violence referral regarding Isaac's mother, Mary C. (mother), and her boyfriend Ryan M., the father of mother's younger child, Bradley M.[1] The children's maternal aunt, who lived in the same apartment complex as the family, told the social worker that mother and Ryan had engaged in a physical altercation on October 8, 2014. The family had a meeting to discuss the situation, but the following morning, Isaac returned to the maternal aunt's home to report that mother and Ryan were again fighting. On October 10, 2014, mother went to the maternal aunt's home and reported that Ryan had assaulted her while she was holding Bradley in her arms.

Mother told the social worker that Ryan came home intoxicated and attempted to take Bradley from her arms. When mother refused to give him the child, Ryan grabbed her by the shoulders, causing her to sustain bruises. Mother managed to extricate herself from Ryan's grasp and fled to the maternal aunt's apartment.

Mother disclosed that there had been domestic violence in her relationship with father as well. She said she suffered multiple black eyes as a result of father's abuse. During one altercation with father, mother fell on top of Isaac. Mother said she ended her relationship with father and they are no longer in contact.

---

[1] Mother and Ryan M. are not parties to this appeal and Bradley M. is not a subject of this appeal.

The family's history included a substantiated allegation of emotional abuse and general neglect of Isaac by father in July 2011. Mother and Isaac had been visiting father in a motel room when father pushed mother onto the bed, causing mother to fall on Isaac. Father then proceeded to beat mother while Isaac was in harm's way. Father fled before law enforcement arrived. The referral was closed because the family was already receiving services at the time.

On November 11, 2014, the Department received another referral regarding mother after Ryan found mother unconscious in the home. Mother was hospitalized for taking an unknown quantity of medication. Mother later admitted being depressed but denied attempting suicide. She told the social worker she had taken pain medication and Xanax. Mother also admitted to smoking marijuana on occasion and using cocaine with Ryan on November 9, 2014.

On November 12, 2014, Isaac's paternal grandmother contacted the social worker and expressed concerns that mother was neglecting Isaac. She said that mother had come to the paternal grandparents' home while under the influence of drugs and had gone to Isaac's school in that condition as well. The paternal grandmother told the social worker that father was incarcerated in Nevada but was scheduled to be released in February 2015.

On November 21, 2014, the Department filed a petition on behalf of Isaac and Bradley under Welfare and Institutions Code section 300, subdivisions (a), (b), and (j),[2] alleging that the children were at risk of harm because of domestic violence between mother and Ryan; a history of domestic violence between mother and father; mother's mental health issues; mother's and Ryan's drug use; and mother's and Ryan's failure to seek necessary medical care for Bradley, who had been diagnosed with Hydrocephalus.

At the November 21, 2014 detention hearing, the juvenile court found father to be Isaac's presumed father. The court further found a prima facie case for detaining both children.

---

[2]    All further statutory references are to the Welfare and Institutions Code.

The Department filed a first amended petition on January 9, 2015, adding allegations that father had a history of illicit drug use and alcohol abuse, that he had drug and alcohol related arrests from 2006 to 2010, and that he was incarcerated on a battery charge associated with his alcohol abuse.

**Jurisdiction/disposition**

Isaac was placed with his paternal grandparents at the time of the Department's January 13, 2015 jurisdiction/disposition report. In a December 31, 2014 interview, mother told a dependency investigator that father had never provided for Isaac. She said that during their relationship, father used methamphetamine, marijuana, and alcohol, and that his substance abuse had caused him to lose his job. Mother said that father became volatile when he used methamphetamine and that he "would beat me up really bad." She recounted the July 2011 domestic violence incident during which father pushed her onto a motel room bed and beat her while Isaac was present. Mother called the police, but father fled and was never apprehended.

The Department recommended that Isaac remain placed with his paternal grandparents and that father be accorded family reunification services, including random drug testing, domestic violence counseling, and individual counseling. The Department further recommended that any visits between father and Isaac be monitored.

The juvenile court accepted a waiver of rights from Ryan on February 2, 2015, and sustained the allegations of the first amended petition applicable to him. At a contested adjudication hearing on February 24, 2015, the juvenile court sustained the allegations pertaining to mother.[3]

On February 23, 2015, the Department provided the juvenile court with a copy of the police report concerning the 2011 domestic violence incident between mother and father. The report stated that after an argument between the parents escalated, father

---

[3] On February 24, 2015, the Department reported that mother had been arrested following a January 30, 2015 domestic violence incident with Ryan during which she punched Ryan in the head, threatened him with a metal object, and bit his hand.

4

threw mother onto the motel room bed, causing mother to fall on Isaac. Father then got on top of mother and began slapping her. When mother tried to stop the attack, father punched her in the face and head.

In a March 13, 2015 supplemental report, the Department reported on a telephonic interview with father that had occurred during the previous week. Father acknowledged that there had been domestic violence in his relationship with mother but claimed that she was the aggressor. Father said he began using methamphetamine in 2005, completed a transitional living program in 2006, and then stopped using drugs altogether. He said his alcohol use was limited to social drinking and that he had been sober since August 2014. Father admitted serving a six-month jail term after pleading no contest to a domestic battery charge following a fight with his roommate. He acknowledged that both he and the roommate had been drinking alcohol at the time.

Father told the social worker that he wanted Isaac to remain with the paternal grandparents, and that Isaac had "improved by leaps and bounds with them." He said he had visited with Isaac four or five times during the month of February and had regular telephone and Skype communications with the child. Father said he planned to save some money and move to California to live with Isaac and the paternal grandparents. He was currently employed by a company that was doing work in the San Diego area.

Father appeared and testified at the May 4, 2015 adjudication hearing. He admitted to being previously addicted to methamphetamine and that he was recently released from custody. Father said his incarceration had been due to domestic violence, and admitted that alcohol was involved. He said he had last consumed alcohol "over a year ago." Father further admitted that in addition to the domestic violence incidents with mother and with his roommate, there had been an incident involving his ex-wife, who accused father of attempting to stab her.

Father testified that he visits with Isaac at least once or twice a month when drives from Nevada to California. When asked what his plans would be if Isaac were returned to his custody, father responded: "Leave him at my parents' house, keep working. Back

5

and forth from California to Nevada until the time was right where I could move and have him with me."

After hearing argument from counsel, the juvenile court sustained the allegations of the first amended petition pertaining to father and accorded him family reunification services and monitored visits.

This appeal followed.

## DISCUSSION

Section 362.1 governs visitation between a dependent child and his or her parent. Subdivision (a)(1)(A) of the statute provides that "[v]isitation shall be as frequent as possible, consistent with the well-being of the child," subject to the condition that "[n]o visitation order shall jeopardize the safety of the child" (§ 362.1, subd. (a)(1)(B)).

An order setting visitation terms is reviewed for abuse of discretion. (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1704.) An abuse of discretion does not occur unless the juvenile court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. (*In re Tamneisha S.* (1997) 58 Cal.App.4th 798, 806.)

Father argues that his visits with Isaac need not be supervised, and that the juvenile court abused its discretion by ordering monitored visits. Father's substance abuse problems, his recent incarceration for assaulting his roommate, and his history of domestic violence with mother and with his ex-wife provide ample support for the juvenile court's order for monitored visitation. The order gives the Department discretion to liberalize the visits, and father can request unmonitored visits once he has demonstrated progress in his case plan. The record discloses no abuse of discretion.

Father contends a remand is necessary because the visitation order is vague and vests too much discretion with the Department. He cites *In re M.R.* (2005) 132 Cal. App.4th 269 (*M.R.*) and *In re Kyle E.* (2010) 185 Cal.App.4th 1130 (*Kyle E.*) as support for his argument that the order must be amended to specify the frequency and duration of the visits. Neither case supports father's position.

6

Both *M.R.* and *Kyle E.* involved a juvenile court's improper delegation to a legal guardian and to a child protective services agency, respectively, the authority to decide whether a parent would be allowed to visit with a dependent child. (*M.R., supra*, 132 Cal.App.4th at p. 272.) The appellate court in *M.R.* distinguished between the juvenile court's non-delegable authority to determine whether visitation should occur and those aspects of visitation that could properly be delegated to a legal guardian: "Because the trial court was required to make a visitation order unless it found that visitation was not in the children's best interest, it could not delegate authority to the legal guardian to decide whether visitation would occur. [Citation.] The court may delegate authority to the legal guardian to decide the time, place, and manner in which visitation will take place. [Citation.]" (*Id.* at p. 274.) The court in *Kyle E.* similarly held that "[i]n fashioning a visitation order, the court may delegate the responsibilities of managing the details of visitation -- including time, place, and manner -- but not the decision whether visitation will occur. [Citation.]" (*Kyle E., supra*, 185 Cal.App.4th at p. 1135.)

In the instant case, the juvenile court's order does not delegate to the Department the authority to decide whether visitation should occur. The order accords father monitored visits with Isaac.

The juvenile court's failure to specify the frequency or duration of father's visits is not a ground for either reversal or remand. Isaac was placed with his paternal grandparents in Los Angeles County, whereas father lived in Nevada and worked primarily in the San Diego area. Although father lived out of state, he said that he visits with Isaac at last once or twice a month and that he had four or five visits in the month of February. Father told the social worker that he had a good relationship with the paternal grandparents and that he wanted Isaac to remain placed with them. Given these circumstances, a visitation order that only limited father's contact with Isaac to monitored visits was not an abuse of discretion.

**DISPOSITION**

The juvenile court's March 13, 2015 visitation order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT